UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAWN MUSGRAVE,

    Plaintiff,

        v.

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 21-cv-554 (APM)

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.    I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA), from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

1

assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 238 FBI employees, supported by approximately 105 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4. The FBI submits this declaration in support of Defendant's Motion for Summary Judgment. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiff's request; Part II describes the procedures used to search for responsive records, and Part III details why specific portions of Plaintiff's request are not reasonably

described in sufficient detail to enable Department personnel to locate records with a reasonable amount of effort.

## PART I:
## ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

5. By electronic FOIA (e-FOIA)[1] dated November 9, 2020, Plaintiff submitted a Freedom of Information Act (FOIA) request to the FBI seeking:

   a. All main file records about the Twitter account @DevinCow, a/k/a "Devin Nunes' Cow." For the remainder of this request, "@DevinCow" will be shorthand for "the Twitter account @DevinCow, a/k/a 'Devin Nunes' Cow."

   b. All cross-references in the Central Records System ("CRS") about @DevinCow.

   c. All internal emails or other correspondence records mentioning @DevinCow created or maintained by the Office of Congressional Affairs.

   d. All emails in the FBI email system(s) or personal email folders on personal computers, regardless of whether they are stored in the CRS, used by the Washington Field Office and San Francisco Field Office mentioning @DevinCow.

   e. All emails in the FBI email system(s) or personal email folders on personal computers, regardless of whether they are stored in the CRS, used by the Criminal, Cyber, Response, and Services Branch mentioning @DevinCow. **(Ex. A.)**

6. By letter dated November 17, 2020, the FBI acknowledged receipt of Plaintiff's FOIA request and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1480963-000. The FBI informed Plaintiff he requested information on one or more third party individuals and the FBI would neither confirm nor deny the existence of such records pursuant to

---

[1] The FBI's eFOIA system allows for electronic receipt of Freedom of Information/Privacy Act (FOIPA) requests as well as for the provision of electronic responses to those requests when possible. See https://efoia.fbi.gov.

FOIA Exemptions 6 and 7(C), 5 U.S.C. 552(b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is the FBI's standard response to such requests and should not be taken to mean that records did, or did not, exist. Additionally, the FBI advised it was closing Plaintiff's request. The FBI instructed Plaintiff to visit www.fbi.gov, select "Services," "Information Management," and "Freedom of Information/Privacy Act" for more information about making requests for records on third party individuals (living or deceased). Finally, the FBI informed Plaintiff he could appeal the FBI's response to the DOJ, Office of Information Policy (OIP) within ninety (90) days of its letter, contact the FBI's public liaison, or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). **(Ex. B.)**

      7.    By letter dated November 23, 2020, Plaintiff submitted an appeal to DOJ, OIP challenging the FBI's third-party *Glomar* response to FOIA request 1480963-000. **(Ex. C.)**

      8.    By letter dated November 23, 2020, OIP acknowledged receipt of Plaintiff's appeal and informed Plaintiff OIP assigned appeal number A-2021-00372 to his appeal. **(Ex. D.)**

      9.    By letter dated February 1, 2021, OIP informed Plaintiff that it was affirming the FBI's actions in response to Plaintiff's FOIPA Request Number 1480963-000 therefore, OIP was closing Plaintiff's appeal. OIP determined that the FBI properly refused to confirm or deny the existence of records responsive to Plaintiff's request and that confirming or denying the existence of such records concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy. Finally, OIP advised Plaintiff if he were dissatisfied with the action on his appeal, Plaintiff could file a lawsuit in federal district court or seek mediation services from OGIS. **(Ex. E.)**

10. On March 3, 2021, Plaintiff filed his Complaint in the instant action. (ECF No. 1)

11. After Plaintiff filed his Complaint, the FBI reassessed its initial *Glomar* response and conducted a search for records pertaining to parts 1-3 of Plaintiff's request. (ECF No. 7)

12. By letter dated May 25, 2021, the FBI informed Plaintiff that it conducted a search of the places reasonably expected to have records concerning parts 1-3 of his request; however, it was unable to identify records subject to the FOIA that were responsive to Plaintiff's request. Additionally, the FBI informed Plaintiff he could seek additional information regarding the FBI's determinations by visiting www.fbi.gov/foia. Lastly, the FBI stated that although Plaintiff's request was in litigation, he could appeal the FBI's determinations by filing an administrative appeal with DOJ, OIP within ninety (90) days of the date of the letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. **(Ex. F.)**

13. By letter dated May 25, 2021, the FBI notified Plaintiff that it had assigned parts 4 and 5 of his correspondence Request Number NFP-129446. The FBI informed Plaintiff his request was overly broad and it did not meet the requirements of Title 28, Code of Federal Regulations, Part 16.3(b), as it was not reasonably described [Title 5, United States Code, Section 552(a)(3)(A)] to enable personnel to locate records with a reasonable amount of effort. The FBI informed Plaintiff he could contact the FBI to ascertain how to reasonably describe his request by contacting foipaquestions@fbi.gov. Plaintiff could also visit www.fbi.gov and select "Services," "Information Management," and "Freedom of Information/Privacy Act" for additional guidance. Finally, the FBI informed Plaintiff he could appeal the FBI's response to the DOJ, OIP within ninety (90) days of its letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting OGIS. **(Ex. G.)**

## PART II:
## THE FBI'S CENTRAL RECORDS SYSTEM AND SEARCH METHODOLOGY

14. Plaintiff's request seeks records on the Twitter account @DevinCow, a subject reasonably expected to be indexed within the automated indices of the FBI's Central Records System (CRS). Given the comprehensive nature of the information contained therein (see ¶¶ 15-16, *infra*), the CRS is the FBI system of records where responsive records would reasonably be expected to be found.

### THE FBI'S CENTRAL RECORDS SYSTEM

15. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices worldwide.

16. The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subjects. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the CRS file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular

subject matter.[2] Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order.

*The Central Records System's General Indices and Indexing*

17.    The general indices to the CRS, comparable to a digital version of a library card catalog, function as the key to locating records within the enormous amount of information contained in the CRS. FBI personnel index information in the CRS by individual (person), organization (entity, place, or thing), or activity or event (e.g., terrorist attack or bank robbery) when information is deemed of sufficient significance to warrant indexing for future retrieval.[3] The entries in the general indices fall into two categories:

- A. <u>Main index entry</u>: A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation. Main subjects are identified in the case title of a file.
- B. <u>Reference index entry</u>: A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but

---

[2] For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO, and "56789" indicates the assigned case specific file number.

[3] The FBI's Records Management Policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. FBI personnel are responsible for managing records they create and receive, determining the record status for each potential record, and importing records into an electronic recordkeeping system. See FBI Records and Information Management Policy Guide, 1223PG (September 22, 2022) at pp. 11-12 and 25-28 (Sections 2.9 and 4.2.3) available at https://vault.fbi.gov/records-and-information-management-policy-guide-1223pg/records-and-information-management-policy-guide-1223pg/view (last accessed on April 29, 2024).

who or which is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file.

*Sentinel*

18.  FBI personnel access the general indices through Sentinel, the FBI's case management system (since July 1, 2012). Prior to Sentinel, the FBI relied on a case management system known as Automated Case Support (ACS).[4] On August 1, 2018, the FBI decommissioned ACS and the ACS indexed data was migrated into Sentinel, where these indices are accessible and searchable through Sentinel's search function. In addition to providing access to the information previously indexed into ACS, Sentinel provides a means for FBI personnel to access the FBI's older manual indices, when necessary.

19.  FBI personnel rely on Sentinel to locate records and other types of documents to fulfill essential functions, such as: conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment queries; and administering security screenings, to include presidential protection. Sentinel's index search methodology and function allow FBI personnel to query the CRS for indexed subjects in case files.

20.  However, the identification of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive. Index searches using the search functions available in Sentinel are how potentially responsive records are located, but ultimately a FOIPA analyst must review potentially responsive records against the specific parameters of individual requests. Responsiveness determinations are made once indexed records are gathered,

---

[4] As part of the ACS implementation process, over 105 million pre-existing CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.

analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

## ADEQUACY OF SEARCH

### *Central Records System Search and Results*

21.    The FBI determined that a search of the CRS automated indices, available within Sentinel via the Sentinel search function represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's FOIA request. This is because, as described above, these general indices provide access to a comprehensive, agency-wide set of indexed data on a broad array of investigative and administrative subjects and consist of millions of searchable records that are updated daily with newly indexed information. In addition, because the requested subject matter would have been indexed after the implementation of Sentinel, the FBI determined that any records would be located using the Sentinel search function.

22.    In response to Plaintiff's request, the FBI conducted a search for main and reference entries[5] in the Sentinel indices via Sentinel's search function. The FBI searched the indices using the following terms: "@DevinCow," "DevinCow," "Devin Nunes' Cow," and "Devin Nunes Cow" employing a search cut-off date[6] of May 17, 2021, which is the date of the FBI's initial search for records. The FBI's search for records did not locate records responsive to Plaintiff's request.

---

[5] See ¶ 17, *supra*, for an explanation of main and reference entries.

[6] A search cut-off date is the date that the agency commences a search for records responsive to a FOIPA request. Generally, the FBI uses a search cut-off date to delineate the scope of a FOIPA request by treating records created after that date as not responsive to the request. See 28 C.F.R. § 16.4(a). The Department of Justice (DOJ) provides notice of the use of a search cut-off date in its published FOIA reference guide on its FOIA website (https://www.justice.gov/oip/doj-guide-freedom-information-act-0) (last accessed April 26, 2024).

*Targeted Search and Results*

23. Regarding part three of Plaintiff's request, the FBI determined that the records requested would not likely be located via a search of the CRS. As such, the FBI took the extraordinary step of conducting a targeted search outside the CRS for records responsive to part three of the request. Because Plaintiff's request did not seek records related to a specific investigation, the FBI determined that records pertaining to the subject created or maintained by the Office of Congressional Affairs (OCA) would reasonably be expected to be in the possession of that office.

24. On April 30, 2021, the FBI, via RIDS, requested that OCA search for records pertaining to internal emails or other correspondence records mentioning @DevinCow and its name variations created or maintained by their office. OCA conducted a search of e-mail and document folders utilizing the terms "DevinCow" and "Nunes." OCA did not locate records responsive to Plaintiff's request.

25. Plaintiff has provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside in any other location and there is no indication from the FBI's targeted search efforts that responsive records would reside in any other FBI location. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be likely to locate responsive records under the FOIA.

### PART III: ITEMS FOUR & FIVE OF PLAINTIFF'S REQUEST ARE NOT REASONABLY DESCRIBED

26. Since the FBI's search of the CRS did not locate any responsive records, the FBI evaluated items 4 and 5 of Plaintiff's request and determined that they are not reasonably

described to facilitate further targeted or email searches. Plaintiff seeks emails used by the San Francisco Field Office, Washington Field Office, and the Criminal, Cyber, and Response Services Branch mentioning @DevinCow, which is a broad subject not reasonably described to enable FBI personnel to locate email records with a reasonable amount of effort.

*Records Sought Must Be Reasonably Described*

27. Legally compliant FOIA requests must (i) reasonably describe the records sought; and (ii) be made in accordance with published rules. See 5 U.S.C. § 552(a)(3)(A). DOJ's FOIA regulation requires requesters to "describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort." See 28 C.F.R. §16.3(b).

*The Nature of FBI Email Records*

28. FBI email communications are stored within the separate email accounts of FBI employees. These accounts include all emails sent to or from the specific employees. Typically, FBI employees have two email accounts – one unclassified email account (UNet) capable of communicating internally, with other government agencies (OGAs), with other branches of the United States Government, and with the public/non-governmental entities; and one classified account (FBINet) to communicate up to the "SECRET" classification level, able to communicate internally, with OGAs, and with other branches of the United States Government. Due to this structure, the FBI must first identify likely custodians of responsive records, and whether communications are likely to be stored within their unclassified and/or classified accounts.

29. Once likely custodians and the appropriate accounts (classified or unclassified) are identified, the FBI must then develop appropriate search terms to search within individual accounts. Since there is no index within FBI employees' email accounts, terms must be designed

to efficiently search all text of emails within employees' accounts. In doing this, the FBI also uses Boolean search limiters to craft appropriate searches of email records.[7] This combination of terms and limiters allows the FBI to conduct email searches for responsive records with a reasonable amount of effort and a reasonable likelihood of locating responsive records.

        30.    To conduct a reasonable search of FBI email communications, the FBI must identify likely custodians and accounts (classified or unclassified) and then develop appropriate search terms to utilize when searching individual accounts. Request items 4 and 5 seek all emails in the FBI email systems or personal email folders on personal computers used by the Washington Field Office, San Francisco Field Office, and the Criminal, Cyber, and Response Services Branch. The field offices and FBI branch requested consist of thousands of personnel located in hundreds of locations both foreign and domestic. While Plaintiff provides terms that may be searchable, the request does not identify any specific custodians likely to possess emails pertaining to the subject of his request. Without specific custodians, the FBI would be required to search the email accounts of thousands of FBI employees, which would tax the FBI's electronic systems and would require a significant amount of time and review by FBI analysts. Accordingly, because it is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, the FBI determined that items 4 and 5 of Plaintiff's request are not reasonably described in a manner that would allow an employee of the agency to locate records outside the CRS with a reasonable amount of effort.

---

[7] Commonly the FBI will use the Boolean search limiter "AND" between two search terms. This will limit results to documents that contain both search terms. Additionally, the FBI uses "OR" between search terms to find documents that contain at least one of the search terms. Finally, and rarely, the FBI uses "NOT" between search terms to limit to documents that contain the first search term but not the second. For example, searching "investigation NOT robbery" would limit to documents containing "investigation," but not those documents that also contain term word "robbery."

## CONCLUSION

31.     Regarding parts 1-3 of Plaintiff's request, the FBI performed adequate and reasonable searches but found no responsive records subject to the FOIA. Parts 4 and 5, however, do not constitute valid FOIA requests, as they fail to reasonably describe records that the FBI could locate with a "reasonable amount of effort." While Plaintiff provides potentially searchable terms, the request does not specify individual custodians likely to possess relevant emails, instead naming entire offices and a branch of the FBI, comprising thousands of employees. Searching through the email accounts of such a vast number of personnel would overburden the FBI's electronic systems and require extensive time and resources. Consequently, the FBI properly denied parts 4 and 5 of Plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through G attached hereto are true and correct copies.

Executed this 31st day of October 2024.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia