UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAWN MUSGRAVE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 1:21-cv-00554 (APM) |
| | * |
| DEPARTMENT OF JUSTICE, | * |
| | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

After attempting to obfuscate the core precepts of its argument in its initial brief, the Federal Bureau of Investigation ("FBI") has finally revealed what it is actually arguing and why, and none of the allegations it now makes are legally—or in many cases factually—supportable. Rather than simply process the Freedom of Information Act ("FOIA") request filed—and then limited—by Plaintiff Shawn Musgrave ("Musgrave") for emails in two field offices mentioning one of two extraordinarily uncommon phrases—"@DevinCow" and "Devin Nunes' Cow"—referring to a specific Twitter account, FBI instead twists both the record and the relevant case law out of recognition to defend its position that it does not need to search for emails unless it wants to. The Court should soundly reject both FBI's general position and its specific arguments as frivolous and grant Musgrave's Cross-Motion for Summary Judgment.

**ARGUMENT**

For ease of reading, Musgrave will address the most problematic issues with FBI's arguments, none of which effectively refute any of Musgrave's contentions, in roughly the order in which they are presented in FBI's Opposition.[1]

As a preliminary matter, the Court should decline to go against the weight of relevant on-point case law and accept FBI's framing of the issues: "Plaintiff argues that determining whether a request reasonably describes the records sought and whether the request would require an unduly burdensome search are *distinct* inquiries. Plaintiff is incorrect." (Def.'s Reply Further Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J., Dkt. #40, at 2 (filed Jan. 24, 2025) (emphasis added) (citation omitted) [hereinafter FBI's Opp'n].) FBI's confusion on this point appears to be based on a false equivalency between overbreadth and undue burden. A request is not reasonably described if it is *overbroad*, in that an agency cannot determine what records are being sought. That is a question which can be decided by only considering the text of the request itself. In contrast, an argument that a request is unduly burdensome can only be made with evidence about the burden that processing it would impose, which is information extrinsic to the request. *See Protect the Pub.'s Tr. v. DOL*, No. 22-2849, 2023 U.S. Dist. LEXIS 168666, at *6 n.2 (D.D.C. 2023) ("The question of whether a FOIA request is impermissibly overbroad is different from whether it is too burdensome. . . . Unlike the former, the latter question is appropriately decided on summary judgment, and so the Court does not address it.").

---

[1] Musgrave's decision to follow the course of FBI's Opposition should not be interpreted as a concession that FBI has properly framed the issues; it is solely to assist the Court in matching FBI's arguments with Musgrave's counterarguments. Similarly, Musgrave has elected not to repeat himself unnecessarily, so if he does not address an argument raised by FBI herein, that is simply an indication that he stands behind the corresponding argument in his Motion.

This is not an academic distinction, and it proves fatal for FBI's argument that Musgrave's request does not reasonably describe the records sought. If the Court *only* evaluates the request *on its face*, without considering anything FBI has to say about how it searches for records or how long it would take, it cannot help but conclude that, *on its face*, a request for all emails in two field offices containing two specific, uncommon Twitter account names, would allow "a professional employee of the agency familiar with the subject matter [to] locate the records with a reasonable amount of effort." (FBI's Opp'n at 1 (quoting *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012)).) Any proffered evidence about how difficult the search would be would only be relevant to the *separate* inquiry of whether the request was unduly burdensome. And critically, the test for "reasonable descriptiveness" is not whether it would require a *minimal* amount of effort, just a *reasonable* amount, and one cannot argue that locating emails containing specific terms is "'seeking difficult to locate records' or requiring 'overly burdensome post-search efforts.'" (*Id.* at 2 (quoting *Ctr. for Immigr. Studs. v. USCIS*, 628 F. Supp. 3d 266, 271-72 (D.D.C. 2022).)

The bulk of the remainder of FBI's Opposition—regarding the alleged burdensomeness of the request—is predicated on the Court's acceptance of two factual contentions: (a) the cut-off date for the request is 17 May 2021; and (b) the FBI FOIA office would have to search all the responsive emails itself. Both of these contentions are materially false.

First, FBI argues:

> Thus, to conduct a complete search not only would the FBI have to search the inboxes of the employees who were assigned to the Washington and San Francisco field offices *on May 17, 2021, the search cut-off date*, . . . but also it would have to search the accounts of all employees who were assigned to either of those field offices (and their eight satellite offices) for all times between August 2017 and May 2021.

3

(*Id.* at 3 (emphasis added).) FBI's declarant correctly states, "A search cut-off date is the date that the agency commences a search for records responsive to a FOIPA request." (Seidel Decl., Dkt. #32-3, at 9 n.6 (filed Nov. 4, 2024).) However, since FBI *never commenced a search for Part 4*, it has not commenced a search for records responsive to that part. FBI cannot conduct a search for *one* part of a request and refuse to conduct searches for *other* parts for multiple years and then complain that the passage of time has made the search more burdensome due to the cut-off date. The cut-off date for Part 4 of the request is whatever date *FBI begins searching for records responsive to Part 4*, which has not happened yet. Therefore, FBI will only need to search for emails belonging to *current* FBI employees at these two field offices, which is much easier.

Second, FBI argues that, contrary to the description Musgrave provided regarding its search process:

> Rather, to conduct a search in response to Plaintiff's request, FBI FOIA analysts identify each employee subject to the search, both current and former employees, who worked at the Washington or San Franscisco Field Offices at any time between August 2017 and May 2021 and search each employee's classified and unclassified email inboxes individually for the term "@DevanCow" [sic].

(FBI's Opp'n at 3 (quoting Seidel Decl. ¶¶ 28-29).) However, even setting aside the date issue addressed above, this is a factually inaccurate characterization of much more generalized testimony. FBI's declarant stated only that *the FBI* searched employees' classified and unclassified email inboxes, not *the FBI FOIA Office.* (Seidel Decl. ¶ 29.) "[A]sk[ing] custodians to perform their own searches of their own email accounts and then turn over the fruits of their respective searches to the FOIA office" (FBI's Opp'n at 3) is still "the FBI" performing the search.

4

The aspect of this argument which transforms it from a simple misunderstanding into an act of bad faith is the fact that Musgrave only knows that the latter process exists because FBI cited it *twice* to claim that other requests were unduly burdensome:

- "Without identified (or even described) employee-custodians of potentially responsive records, the FBI cannot conduct email or electronic searches, because the FBI lacks the technical capability to search for electronic records without specific employee-custodians being identified . . . . And it is simply not reasonable (or even feasible) to ask *every* FBI office and the more than 35,000 employees of the FBI to conduct searches for any non-investigative records bearing the name of Donald John Trump, unrelated to the FBI's law enforcement mission, which may or may not exist." 2d Hardy Decl., Dkt. #21-1, ¶ 16 (filed Jan. 29, 2018), *Prop. of the People, Inc. v. DOJ*, No. 17-1193 (D.D.C.).

- "Furthermore, without identified (or even described) employee-custodians, the FBI cannot conduct e-mail searches. This is because the FBI lacks the technical capability to search for emails without specific employee-custodians being identified . . . . Additionally, it is simply not reasonable (or even feasible) to ask every FBI office and the more than 35,000 employees of the FBI to conduct email searches related to Plaintiff's requests." 3d Hardy Decl., Dkt. #41-2, ¶ 12 (filed Nov. 21, 2018), *Machado Amadis v. DOJ*, No. 16-2230 (D.D.C.).

The Court should soundly condemn this transparent gamesmanship and order FBI to perform the requested searches in an expedited fashion to make up for the extraordinary delay it has already granted itself through this bad faith inaction.

**CONCLUSION**

For the foregoing reasons, the Court should grant Musgrave's Cross-Motion for Summary Judgment.

Date:   February 10, 2025

                                         Respectfully submitted,

                                         /s/ Kelly B. McClanahan
                                         Kelly B. McClanahan, Esq.
                                         D.C. Bar #984704
                                         National Security Counselors
                                         1451 Rockville Pike
                                         Suite 250
                                         Rockville, MD 20853
                                         501-301-4672
                                         240-681-2189 fax
                                         Kel@NationalSecurityLaw.org

                                         *Counsel for Plaintiff*