UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAWN MUSGRAVE,<br><br>      Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE,<br><br>      Defendant. | Civil Action No. 21-0554 (APM) |

**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Introduction ………………………………………………………………………….……1

Relevant Factial and Procedural Background ........................................................................ 1

Legal Standards ....................................................................................................................... 3

Argument ................................................................................................................................. 5

Conclusion ............................................................................................................................. 10

Defendant the Department of Justice respectfully submits this memorandum of points and authorities in support of its renewed motion for summary judgment in this Freedom of Information Act ("FOIA") case.

## INTRODUCTION

Plaintiff Sean Musgrave submitted four FOIA requests to various Department of Justice components for records generally concerning the @DevinCow Twitter account. After three years of productions, followed by negotiations, and one round of summary judgment briefing the parties remain at an impasse regarding just one issue: whether Part 4 of Plaintiff's request to the Federal Bureau of Investigation ("FBI") reasonably describe the records sought. As explained below, Part 4 of Plaintiff's request does not describe the records in sufficient detail to enable the FBI to locate the records with a reasonable amount of effort. Thus, Defendant is entitled to an order granting summary judgment in its favor.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from Freedom of Information Act ("FOIA") requests that Plaintiff Shawn Musgrave submitted to four Department of Justice components concerning the @DevinCow Twitter account. *See generally* Am. Compl. (ECF No. 8-1). Plaintiff directed requests to the FBI, *id*. ¶¶ 15-23, the Office of Information Policy, *id*. ¶¶ 24-29, the Executive Office for U.S. Attorneys, *id.* ¶¶ 30-44, and the Criminal Division. *Id*. ¶¶ 45-54. Dissatisfied with the components' responses, Plaintiff filed suit on March 3, 2021. *See generally* Compl. (ECF No. 1). During the following three years, these four components made rolling productions of records responsive to the requests. *See generally* Jt. Status Rpts. And through good faith negotiations, the parties eliminated almost all the disputes regarding the Department's productions. *See generally* Jt. Status Rpts. (ECF Nos. 24, 26-31). But the parties reached an impasse regarding the FBI's response to Parts 4 and 5 of Plaintiff's request to the FBI. Jt. Status Rep. ¶ 2 (ECF No. 31).

Most relevant to the remaining dispute is Plaintiff's November 9, 2020, FOIA request to the FBI, which seeks:

(1) All main file records about the Twitter account @DevinCow, a/k/a "Devin Nunes' Cow." For the remainder of this request, "@DevinCow" will be shorthand for "the Twitter account @DevinCow, a/k/a 'Devin Nunes' Cow."

(2) All cross-references in the Central Records System ("CRS") about @DevinCow.

(3) All internal emails or other correspondence records mentioning @DevinCow created or maintained by the Office of Congressional Affairs.

(4) All emails in the FBI email system(s) or personal email folders on personal computers, regardless of whether they are stored in the CRS, used by the Washington Field Office and San Francisco Field Office mentioning @DevinCow.

(5) All emails in the FBI email system(s) or personal email folders on personal computers, regardless of whether they are stored in the CRS, used by the Criminal, Cyber, Response, and Services Branch mentioning @DevinCow.

*See* FBI FOIA Request (ECF No. 32-4 at 3).

The FBI searched for records responsive to parts 1-3 of the request but did not locate any responsive records. Seidel Decl. ¶ 21-25 (ECF No. 32-3). Plaintiff is not contesting the scope of the search, or any other aspect of the FBI's response to parts 1-3. Jt. Status Report ¶¶ 2-4 (ECF No. 31). But the FBI determined it could not search for records responsive to parts 4 and 5 of the request because Plaintiff did not describe the records sought in a manner that would allow the FBI to locate responsive records with a reasonable amount of effort. Seidel Decl. ¶¶ 26-30.

On November 4, 2024, the FBI moved for summary judgment arguing that Plaintiff failed to reasonably describe the records sought in parts 4 and 5 of the request. *See* Mot. For Summ J. (ECF No. 32). In his opposition and cross motion for summary judgment, Plaintiff elected to exclude part 5 of his request from the lawsuit. Opp'n at 2 (ECF No. 35). After excluding part 5, the sole remaining issue in the case boiled down to whether Plaintiff's request for "All emails in

the FBI email system(s) or personal email folders on personal computers, regardless of whether they are stored in the CRS, used by the Washington Field Office and San Francisco Field Office mentioning @DevinCow" reasonably described the records sought. Declaration of Shannon Hammer ¶ 5 (attached herewith).

On June 13, 2025, the Court issued an order denying the parties' cross motions for summary judgment without prejudice. Order (ECF No. 45). The Court determined that it could not resolve the parties' motions because the FBI's declaration did not describe the burdens associated with processing part 4 of Plaintiff's request by itself. *Id*. at 1. The Court ordered Defendant to renew its motion for summary judgment with a declaration that "(1) identif[ies] separately the total number of employees in the Washington and San Francisco field offices covered by Part 4, and (2) respond[s] to Plaintiff's suggestion that a search could be conducted without undue burden by asking each employee individually to conduct emails searches using one or two search terms." *Id*. The Declaration of Shannon Hammer, Acting Section Chief for the FBI's Record/Information Dissemination Section in the Information Management Division, address the two issues the Court's order. The Court permitted the FBI to disclose the precise number of employees in the Washington and San Francisco Field Divisions in an *ex parte in camera* declaration. Order at 1 (ECF No. 45). Because this information is law enforcement sensitive, Hammer will submit a separate *ex parte in camera* declaration for the Court's consideration.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary

judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*.

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

FOIA sets forth two requirements applicable here that are prerequisites for a valid request: a request must (i) "reasonably" describe the records sought, and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002). The obligation to process a request only begins upon receipt of a valid request, i.e., one that satisfies these requirements. *Dale*, 238 F. Supp. 2d at 103.

Thus, a plaintiff fails to state a FOIA claim if its FOIA request fails to reasonably describe the records sought. *See Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'") (quoting 5 U.S.C. § 552(a)(3)(A)); *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request. A proper request must 'reasonably describe[ ]' the records sought[.]") (quoting 5 U.S.C. § 552(a)(3)(A)).

As a general matter, records are considered reasonably described "'if a professional employee of the agency familiar with the subject matter can locate the records with a reasonable amount of effort.'" *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012). But that general rule still requires that some "subject matter" or defined "class" of records be identified. *Am. Fed'n of Gov't Emps. v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990); *cf. Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021) (finding a request seeking documents "referencing or regarding in any way" eight topics to be too broad to allow the agency "to determine precisely what records are being requested").

Whether a FOIA request "reasonably describes" the records sought "is a purely legal question of statutory interpretation." *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 274 (D.D.C.

2012) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). That is, whether a request is reasonably described is an objective test, and courts are equipped to make this determination by resort to the FOIA request alone. *See Dale*, 238 F. Supp. 2d at 105 (noting that document request was deficient "on its face"). In other words, agencies need not introduce evidence showing that, based on a particular document request, their professionals are incapable of locating the requested records with a reasonable amount of effort. *See Borden v. FBI*, No. 94-1029, 1994 U.S. App. LEXIS 16157 at *2 (1st Cir. Jun. 28, 1994) ("[T]he request . . . does not reasonably describe the records sought. Since the complaint shows on its face that the plaintiff did not present a proper request, we need not consider defendant's remaining arguments."). The inquiry focuses on whether the request is objectively reasonably described. *Dale*, 238 F. Supp. 2d at 105.

Finally, overbroad and unreasonably burdensome requests are invalid because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989). Nor was FOIA intended to allow requesters to conduct a "fishing expedition" through agency files. *Dale*, 238 F. Supp. 2d at 104-05. This limitation protects the ability of federal agencies to prioritize their resources, while also providing the public reasonable access to agency records. *See*, *e.g.*, *Int'l Counsel Bureau v. Dep't of Def.*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010).

Ultimately, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps.*, 907 F.2d at 209; *see also Freedom Watch v. State*, 925 F. Supp. 2d 55, 62-63 (D.D.C. 2013) (dismissing complaint where overbroad requests were "infirm from the beginning" regardless of defendants' response to the requests). "The upshot is that, when the request as drafted would require an agency to undertake an unreasonably

burdensome search, the agency can decline to process the request." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

Here, Part 4 of Plaintiff's request would require the FBI to conduct an unduly burdensome search. FBI FOIA Request (ECF No. 32-4 at 3); Hammer Decl. ¶ 10. Specifically, Part 4 sought "[a]ll emails in the FBI email system(s) or personal email folders on personal computers, regardless of whether they are stored in the [Central Records System], used by the Washington Field Office and San Francisco Field Office mentioning @DevinCow." *Id.* As written, Part 4 seeks all emails from all custodians (*i.e.,* FBI employees) in the Washington Field Office, and San Francisco Field Office "@DevinCow." *Id.*; Hammer Decl. ¶ 5.

To conduct email searches "in FBI email systems(s) or personal email folders on personal computers", the FBI must first identify which employees would likely have responsive records and whether those records would be stored in those employees' classified or unclassified inboxes. Hammer Decl. ¶¶ 7-8. Indeed, Plaintiff asks the FBI to search the classified and unclassified inboxes of all employees in the Washington and San Francisco Field Offices. *Id.* ¶ 9. The FBI does not have a database that allows it to simultaneously mine all email accounts in a particular division for emails containing a single term. *Id.* ¶¶ 7-8. Rather ,the FBI would need to search each account individually for emails with the term "@DevonCow". *Id.* ¶ 9. The Washington and San Francisco Field Offices are among the larger FBI Field Offices, with the Washington Field Office alone employing over 1,600 Special Agents and professional staff. *Id.* Unless Plaintiff identifies specific custodians, Part 4 requires the FBI to search both the classified and unclassified email accounts of thousands of FBI employees, which would tax the FBI's electronic systems and would require a significant amount of time and review by FBI analysts. *Id.* ¶ 10.

Further complicating matters, neither Plaintiff's request nor his Part 4 includes a timeframe. FBI FOIA Request (ECF No. 32-4 at 3). Plaintiff submitted the request on November 9, 2020, nearly five years ago, and many employees who were working in the Washington and San Francisco Field Offices have since transferred to other offices or ended their employment with the FBI. Hammer Decl. ¶¶ 11-12. Thus, before it can even begin searching the thousands of inboxes that Plaintiff's Part 4 requires it to search, the FBI would need to identify all of the employees in the two largest field offices across an unspecified timeframe and assemble a list of those individuals. *Id.* ¶ 11. Moreover, the number of inboxes that the FBI needs to search would increase or decrease based on the timeframe. *Id.* For example, "if Plaintiff were to desire a complete search of all employees who would have been employed in those offices in the three months leading up to their request, the shifting of personnel alone would considerably increase those numbers and would require extensive documentation and research." *Id.* ¶ 12. If Plaintiff wanted the FBI to increase the timeframe to six months, one year, or more prior to the date of the request, the number of custodians that the FBI would need to search would progressively increase. *Id.*

Plaintiff's suggestion that the FBI task employees in the Washington and San Francisco Field Offices with searching their own repositories is not practical and, thus, the FBI does not use this method to conduct searched for records responsive to FOIA requests. *Id.* ¶ 11; *see also* Opp'n at 8 (ECF No. 35). In addition to the fact that many of these employees have transferred offices or are no longer employed with the FBI making them difficult to contact, tasking employees with a constant stream of FOIA requests in addition to their regular duties "would impart extreme logistical and administrative burdens on the process." Hammer Decl. ¶ 11. For these reasons, the FBI relies on an enterprise email search platform to conduct appropriate searches of the email records of identified custodians within a given timeframe. *Id.* ¶ 11. This search method ensures

that FOIA staff search the correct pool of records, regardless of whether a particular custodian is employed with the FBI at the time of the search. *Id.* Plaintiff's refusal to identify specific record custodians makes it impossible for the FBI to conduct this type of search without gathering lists of employees who worked at each field office during the relevant timeframe and then searching each of their inboxes individually. *Id*. ¶¶ 11-12

Indeed, courts have found such requests to be unreasonably broad in circumstances, like here, where the requestor failed to describe which specific employees' or other custodians' records were at issue. *See Protect the Pub.'s Tr. v. Dep't of Lab.,* Civ. A. No. 22-2849 (TJK), 2023 U.S. Dist. LEXIS 168666, at *10-11 (D.D.C. Sept. 21, 2023) (request seeking communications between "any political appointees" and "any employee or representative" of one of twenty-five organizations does not reasonably describe records sought); *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 37, 44-45 (D.D.C. 2022) ("plaintiffs' request for correspondence between the FBI and 'agents and employees' of the six listed [Virginia State] officials and offices is so vague as to prevent an agency professional from 'determin[ing] precisely what records are being requested'"); *Am. Ctr. for L. & Just*., 573 F. Supp. 3d at 86 (noting unreasonableness of request where the phrase "representative or agents" of the Secretary of Homeland Security "encompasses each of the Department's 240,000 employees")

Consistent with the weight of authorities, the Court should find Part 4 fails to identify records that FBI staff can locate with a reasonable amount of effort, Part 4 fails to reasonably describe the records sought, and thus the FBI is entitled to summary judgment in its favor as a matter of law.

## CONCLUSION

For these reasons, the Court should grant Defendant's renewed motion for summary judgment.

Dated: July 28, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ John J. Bardo*
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*